IN THE UNITED STATES COURT OF FEDERAL CLAIMS

<u>MEGAN WHITTINGTON et, al</u>
    *Plaintiff(s)*

v.

<u>THE UNITED STATES</u>

    *Defendant(s)*

Case No. <u>22-1807C</u>

Judge <u>MARIAN BLANK HORN</u>

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The defendants have filed a second motion to dismiss the plaintiffs' claims, claiming that the court lacks jurisdiction. However, the defendants cannot ignore or disregard due process of law, which is mandated by the Constitution and denied to plaintiffs causing extreme deprivation to life liberty and property, as well as cause extreme mental and emotional distress. Furthermore, the Virginia truancy court system is required to adhere to due process and provide a fair hearing for all parties. In this case, this was not done, and the plaintiff's constitutional rights were flagrantly violated. The plaintiffs have clearly established that the defendants' actions violated their constitutional rights and caused them significant harm. The defendants cannot deny that their actions violated both state and federal laws. Furthermore, the defendants' disregard for due process and constitutional rights has set a dangerous precedent for Virginia's truancy court system. If these actions are not stopped, a systemic violation of the rights of all parties involved in truancy cases may occur. The defendants' attempt to dismiss the case is an insult not only to the plaintiffs but also to the principles of justice and fairness. According to the plaintiffs, the defendants' motion to dismiss is an attempt to avoid facing the consequences of their actions. However, plaintiffs contend that the evidence gathered clearly shows that the defendants are guilty of the violations they are accused of, and that their actions have harmed their livelihoods and emotional well-being. The plaintiffs are adamant about holding the defendants accountable and will fight for justice until they get it.

Accordingly, for the reasons stated below and in Plaintiffs' first opposition to Defendant's

Received – USCFC
MAY 0 1 2023

motion to dismiss, which is fully incorporated herein and upon which Plaintiffs rely, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

STANDARD OF REVIEW

Rule 12(b)(1) subject matter jurisdiction challenges require the court to accept the sufficiency of the allegations as true. A complaint must contain enough facts to state a plausible claim for relief under Rule 8(a) of the Federal Rules of Civil Procedure. A claim is plausible if the plaintiff alleges facts that allow the court to hold the defendant accountable for the alleged misconduct, according to Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Therefore, at the pleading stage, a plaintiff does not need all of the defendant's actions to support their claim. By accepting the allegations as true, the court can hold these officials accountable and ensure legal repercussions. Therefore, the plaintiffs' claims for loss of livelihood and mental health should be accepted.

ARGUMENT

I.        Defendant's Jurisdictional Challenges Under Rule 12(b)(1) Fails

The plaintiffs argue that the defendants' jurisdictional challenges under Rule 12(b)(1) fail because they have plausibly alleged their claims. The standard principles of statutory interpretation, constitutional avoidance, and long-standing jurisprudence mandating a liberal construction of jurisdictional statutes all support the plaintiffs' claims. 28 U.S.C. 1331 is a federal statute that grants federal courts original jurisdiction over civil actions arising from the Constitution, federal laws, or international treaties. Article III of the Constitution of the United States includes federal jurisdiction over domestic relations cases involving federal issues. Federal courts are essential for the protection of individual rights and liberties as well as the promotion of legal fairness and equality. Particularly in cases involving the sanctity of the family, the courts have a significant responsibility to strike a balance between the government's interests and individual rights. To ensure that justice is served and the Constitution is upheld, the judiciary must remain impartial and independent. Any attempt to limit this authority would be unconstitutional and would go against Congress' intent. This jurisdiction ensures that the case will be heard fairly and impartially, free of any potential bias or influence from local interests. It also ensures that any legal decisions made are enforceable throughout the country, providing a sense of consistency and predictability in the legal system. Additionally, federal jurisdiction over domestic relations cases involving federal issues can promote individual rights protection. The Supreme Court has repeatedly stated that it is the responsibility of federal courts to defend and enforce constitutional rights against states. Any attempt to limit their jurisdiction in such cases would be unconstitutional and violate Article III. Without federal oversight, state and local officials may continue to violate individuals' constitutional rights without consequence. Without federal guidance, states may enact discriminatory or

unconstitutional laws, resulting in a loss of trust in the justice system and harm to individuals. It is critical for the federal government to take an active role in protecting all citizens' rights and ensuring that justice is served fairly and impartially to ensure the strength and justice of our democracy and legal system.  Overall, the plaintiffs argue that their claims are plausible and should not be dismissed on jurisdictional grounds.

| II. | PLAUSIBLY ALLEGES HER CLAIMS |
|---|---|

The capacity of individuals to hold the government accountable for its actions is fundamental to democracy and the rule of law. The plaintiffs contend that public officials have disregarded their rights to a fair trial and equal protection under the law. The lack of effective government oversight and accountability has allowed these violations to continue unchecked. The government must be held responsible for the defendants' violations of the plaintiffs' rights and the resulting harm. They feel these violations have gone unpunished because there is no system of checks and balances in place to ensure that those in power are held accountable. Furthermore, the plaintiffs argue that the lack of accountability has created a culture of impunity among public officials, leading to a pattern of abuse and discrimination against marginalized communities. This has resulted in a widespread distrust of the government and a loss of faith in the justice system. They are hopeful that the court will recognize the gravity of their claims and take action to hold the government accountable for its actions.  The plaintiffs are asking the court for redress and compensation for the damage done by the defendants' official actions.

The plaintiffs have filed multiple claims against the defendants, including violations of constitutional rights, breach of contract, intentional tortious interference, false imprisonment, abuse of discretion, malicious prosecution, defamation, libel, or slander, and cruel and unusual punishment. These claims are based on various legal statutes, including 42 U.S.C. 1983, Virginia Constitution Article 1 Bill of Rights, the Fourth Amendment, and the Fourteenth Amendment.In summary, the plaintiffs have filed multiple claims against the defendants, including Section 1983, breach of contract, intentional tortious interference, false imprisonment, abuse of discretion, malicious prosecution, defamation, libel or slander, and violations of constitutional amendments. These claims are related to the alleged willful violation of Megan Whittington and Alic Stanleys' constitutional rights. In addition to these claims, the plaintiffs are also seeking compensatory and punitive damages for the harm they have suffered as a result of the defendants' actions. Compensatory damages are intended to compensate the plaintiffs for any actual losses they have suffered, such as medical expenses, lost wages, and pain and suffering. The plaintiffs are also seeking injunctive relief to prevent the defendants from continuing to violate their rights in the future. The violations of the plaintiffs' constitutional rights is a serious offense and cannot be overlooked. The defendants' defamation, libel, or slander also added insult to injury, as Megan Whittington's reputation was unjustly tarnished. It is clear that the defendants acted with malice and intent to harm, and their actions have caused lasting damage to the

plaintiffs. It is imperative that justice be served and the defendants held accountable for their egregious actions. and this case serves as a reminder that without federal law, individuals may not be able to seek justice and hold those responsible accountable. It is important for the federal government to uphold the Constitution and protect citizens' rights, as demonstrated through Whittington's claims under 42 U.S.C. 1983. Without federal oversight, state and local officials may continue to violate individuals' constitutional rights without consequence. The plaintiffs' lack of prior involvement with the Shenandoah County Department of Social Services or the Shenandoah County Commonwealth of Virginia Juvenile and Domestic Relations Court highlights the possibility of rights being violated without warning or cause. Furthermore, by conducting unreasonable searches and seizures without probable cause or a warrant, the defendants openly violated the Fourth and Fourteenth Amendments. In addition to procedural violations, the defendants were successful in preventing Megan Whittington from ever being heard meaningfully because there was no hearing for her son's unlawful removal. The evidence supports the plaintiffs' contention that each defendant intended to intentionally, repeatedly, and premeditatedly harm her. The defendants' actions not only violated federal and state civil rights laws, but also breached their contractual obligations to Megan Whittington. They also violated Megan Whittington's constitutional rights intentionally. This was an intentional conspiracy under Title 18 of the United States Code, Sections 241 and 242. The plaintiffs claim that the defendants violated their constitutional rights on purpose and engaged in a pattern of discrimination against them. Furthermore, the defendants' actions caused Megan Whittington and her children significant emotional distress and trauma. The plaintiffs are seeking restitution for losses sustained as a result of the defendants' intentional and illegal actions. The right to parent includes the right to direct one's children's education and upbringing, according to the Supreme Court. This includes making decisions about the child's education, religion, medical care, and other important aspects of their lives. However, the defendants in this case ignored these constitutional rights and violated the plaintiffs' civil liberties. and caused the plaintiffs to suffer greatly, and their actions set a dangerous precedent for government officials abusing power. Furthermore, the defendants' actions not only violated the plaintiffs' constitutional rights but also undermined the principles of democracy and justice. The government has a responsibility to protect its citizens and uphold their rights, not to abuse its power and infringe upon their liberties. The egregious actions of the defendants in this case highlight the need for stronger accountability measures for public officials and the importance of protecting the civil rights of all individuals.

The defendants clearly violated numerous constitutional rights of the plaintiffs in this case, including their right to be free from government intimidation and their right to parent their children as they see fit. It is critical that the defendants face consequences for their actions and that justice is served for the long-term harm they have caused. Upholding these fundamental rights is critical to ensuring equal legal protection, which the defendants violated by denying both Whittington and Stanley a fair hearing on multiple occasions. The Virginia Code 63.2-1517 clearly states that families have the right to due process before

their children are taken away from them. It also forbids general warrants of search and seizure, due process of law, contract obligations, the taking of private property, prohibited discrimination, and jury trials in civil cases. Additionally, excessive bail and fines, as well as cruel and unusual punishment, are all prohibited. It is important that justice is served and that the defendants face consequences for their actions, as upholding these fundamental rights is critical to ensuring equal legal protection for all. Virginia recognizes tortious interference with parental rights suits, such as Wyatt v. McDermott, 283 Va. 685 (2012), which was the sole remedy for a father's parental rights being violated. Even with this limited authority, the Commonwealth is heavily conditioned through the imposition of a series of procedural requirements that must attend to and follow a child's removal. The judge must further conclude that no less drastic measures would sufficiently protect the child. Finally, at least ex parte judicial review to ratify the initial removal decision must be obtained "as soon as possible. This Court must determine whether the district court erred in dismissing all claims that explicitly state an emergency must exist to justify the seizure of a child without a warrant, or whether a decision by this Court is necessary to "clearly establish" such a law. If the government never provided a compelling reason to interfere with parental rights, did the trial court err in upholding Virginia statutes as well as those of the federal government? Whittington asserts that a comprehensive investigation would reveal the truth and that the district court's decision to dismiss the case was based on defendant, Stephanie Danner's false testimony. The dismissal of the Whittingtons' case by the district court violated their constitutional rights and established a dangerous precedent for future cases. and that the court's dismissal decision was grossly unfair. The plaintiffs also assert that the court's decision has caused emotional and psychological harm to the mother and her children. They assert that the court's disregard for the significance of familial ties and the harm caused by unwarranted state intervention violate their constitutional rights. In addition, Whittington asserts that the district court's decision to dismiss their case disregards the numerous violations of their constitutional rights. They contend that the government's actions in this case were both unconstitutional and a violation of their fundamental right to family integrity. Families have the right to be informed of the decision to remove their child from their custody, as well as the rationale and steps taken to reach this conclusion. It is the responsibility of government officials to demonstrate that their intervention on behalf of a child was legal under the Constitution; however, plaintiffs have never been provided with a legal justification for the malicious intrusion that their family continues to suffer. The district court's dismissal of the Whittingtons' set a dangerous precedent for future cases and that the court's decision to dismiss the case was grossly unfair. The plaintiffs also claim that the court's decision has caused the mother and her children emotional and psychological harm. They claim that the court's disregard for the importance of familial ties, as well as the harm caused by unjustified state intervention, violates their constitutional rights. Whittington also claims that the district court's decision to dismiss their case ignores numerous violations of their constitutional rights. They claim that the government's actions in this case were unconstitutional as well as a violation of their fundamental right to family integrity. A child's removal from his or her home is a serious and often traumatic event, and families

have the right to know why and how such a decision was made, as well as a detailed explanation for their actions. Government officials must provide evidence that their involvement on behalf of a child was constitutionally permissible; the lack of such evidence suggests that the officials acted inappropriately. Families have the right to be informed of the decision to remove their child from their custody, as well as the reasoning behind the decision and the steps taken to reach that conclusion. Government officials are responsible for demonstrating that their intervention on behalf of a chilld under the Constitution; however, plaintiffs have never been provided with any sort of legal justification for the malicious intrusion that their family continues to suffer. This lack of transparency has fostered distrust and resentment toward the local government, which appears to prioritize its own power over the well-being of the children and families it is supposed to serve. As a result, we respectfully request that the court order the defendants, J&DR Court and SCDSS, to turn over all records relating to Alic Stanley. Furthermore, SCDSS's actions against the plaintiffs must be fully explained. The parties responsible must provide proof that Megan Whittington and Alic Stanley's rights were not violated. Furthermore, the court must ensure that the defendants in this case follow all applicable laws and regulations. The plaintiffs in this case seek accountability and justice for the defendants' actions, as well as reforms in child protective services and the legal system to prevent similar injustices in the future. They advocate for greater transparency and accountability in decision-making, more opportunities for families to challenge child removal, and more training for judges and lawyers to ensure they understand how to protect individual rights. The lack of expertise among local officials has resulted in the unjust separation of children from their families. A parent's interest in the custody of their children is a liberty interest that has received considerable constitutional protection. The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake. A father enjoys the right to associate with his children, which is guaranteed by this amendment as incorporated in Amendment 14, or which is embodied in the concept of "liberty". The United States Supreme Court noted that a parent's right to "the companionship, care, custody, and management of his or her children" is an interest "far more precious" than any property right. May v. Anderson, 345 US 528, 533; 73 S. Ct. 840, 843 (1952). A parent's right to care for and companion their children is so fundamental as to be guaranteed protection under the First, Ninth, and Fourteenth Amendments of the United States Constitution. The Court of Appeals for the 9th Circuit (California) held that the parent-child relationship is a constitutionally protected liberty interest. This is due to the centrality of family life as the focus of personal meaning and responsibility. The U.S. Court of Appeals for the 9th Circuit (California) held that the parent-child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment. Bell v. City of Milwaukee, 746 F.2d 1205, 1242–45; US Ct. App. 7th Cir. WI (1985). A parent's right to the preservation of his relationship with his child derives from the fact that the parent's achievement of a rich and rewarding life is likely to depend significantly on his ability to participate in his child's life, i.e., in the rearing of his children. A child's corresponding right to protection from interference in the relationship derives from the psychic importance to him of being raised by a loving,

responsible, and reliable adult.

The defendants' actions clearly interfered with the plaintiff's fundamental right to parent and make decisions about the well-being of her children. The defendants' emotional distress and harm must not be overlooked, and the plaintiffs are seeking justice. The plaintiffs are seeking compensation for emotional distress, loss of companionship, and any other damages caused by the defendants' actions. Megan Whittington and her son were denied their liberty and autonomy, and their fundamental human rights were violated. Furthermore, the plaintiff's mental and emotional well-being has been irreparably harmed as a result of the defendants' intentional conspiracy, with her suffering from anxiety, depression, and post-traumatic stress disorder. Her family has also been affected, with her sons forced to endure the trauma of separation. The defendants' actions were ethically wrong, violated basic principles of humanity and compassion, and caused Megan and her family significant damage and loss. The court must acknowledge the seriousness of the defendants' actions and hold them accountable for flagrant violations of the plaintiffs' constitutional rights. The plaintiffs ask the court to rule in their favor and provide them with the justice they deserve.

<u>Respectfully Submitted</u>

<u>Megan Whittington</u>

<u>04/24/2023</u>

*[signature]*

# In the United States Court of Federal Claims

MEGAN WHITTINGTON, ALIC STANLEY

Plaintiff(s),

v.

THE UNITED STATES,

Defendant.

Case No. 22-1807C

Judge MARIAN BLANK HORN

## CERTIFICATE OF SERVICE

I hereby certify that on __4/24/23__, a copy of PLAINTIFFS SECOND OPPOSITION TO DEFENDANTS SECOND MOTION TO DISMISS,

was mailed via __U.S POSTAL SERVICE__, to __Lisa Reyes, Clerk of Court__,

at United States Court of Federal Claims, Howard T. Markey National Courts Building 717 Madison Place NW Washington, DC 20439

(Signature of Applicant)

MEGAN WHITTINGTON
(Printed Name)

120 HOTTEL ROAD
(Street Address)

WOODSTOCK, VA. 22664
(City, State, ZIP Code)

540-481-2614
(Phone Number)

Received – USCFC
MAY 0 1 2023

# In the United States Court of Federal Claims

MEGAN WHITTINGTON, ALIC STANLEY )
)
_____ )
                            Plaintiff(s), )
)
v. )
)
THE UNITED STATES, )
)
                            Defendant. )
_____ )

Case No. 22-1807C

Judge MARIAN BLANK HORN

## CERTIFICATE OF SERVICE

I hereby certify that on 4/24 23, a copy of PLAINTIFFS SECOND OPPOSITION TO DEFENDANTS SECOND MOTION TO DISMISS, was mailed via U.S POSTAL SERVICE, to ANNE M. DELMARE, at CIVIL DIVISION PO BOX 480, BEN FRANKLIN STATION WASHINGTON DC 20044.

_____
(Signature of Applicant)

MEGAN WHITTINGTON
(Printed Name)

120 HOTTEL ROAD
(Street Address)

WOODSTOCK, VA. 22664
(City, State, ZIP Code)

540-481-2614
(Phone Number)

Megan Whittington
120 Hottel Rd.
Woodstock, Va. 22664





RECEIVED
MAY - 1 2023
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

U.S. POSTAGE PAID
FCM LG ENV
WOODSTOCK, VA
22664
APR 24, '23
AMOUNT
$1.74
R2305M148603-03

RDC 99    20439

United States Federal Court of Claims
Howard T. Markley National Courts
Building 717 Madison Place
NW Washington, DC 20439