In the United States Court of Federal Claims
No. 22-1807C
Filed: June 29, 2023

```
* * * * * * * * * * * * * * * * * *
                                   *
MEGAN DE'AN WHITTINGTON and        *
ALIC STANLEY,                      *
                                   *
            Plaintiffs,            *
                                   *
v.                                 *
                                   *
UNITED STATES,                     *
                                   *
            Defendant.             *
                                   *
* * * * * * * * * * * * * * * * * *
```

**Megan De'an Whittington** and **Alic Stanley**, pro se, Woodstock, VA.

**Anne Delmare**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her were **Deborah A Bynum**, Assistant Director, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C.

**O P I N I O N**

**HORN, J.**

Pro se plaintiffs Megan De'an Whittington and Alic Stanley, a mother and son, filed a complaint against the United States in the United States Court of Federal Claims on December 8, 2022, seeking "compensatory and punitive damages" for interference with plaintiffs' "fundamental familial rights" because of allegedly unconstitutional, criminal, and tortious actions by Virginia state courts and local Virginia agencies and officials.

**FINDINGS OF FACT**

Plaintiff Megan De'an Whittington is a single mother to plaintiff Alic Stanley.[1] Ms. Whittington and Mr. Stanley moved to Virginia in April of 2019. That same month, Amanda

---

[1] Ms. Whittington was the sole plaintiff in a previous case filed in this court on September 1, 2021, which was dismissed, without prejudice, by the undersigned after plaintiff failed to timely file a response to defendant's motion to dismiss. See Whittington v. United States, No. 21-1801C, 2022 WL 883322, at *1 (Fed. Cl. Jan. 3, 2022), aff'd, No. 2022-1571, 2022 WL 2431624 (Fed. Cir. July 5, 2022). Although two pro se plaintiffs, Megan

Kibler, apparently a truancy officer for Shenandoah County Public Schools, filed a truancy petition for Mr. Stanley with the Shenandoah County Juvenile and Domestic Relations Court regarding Mr. Stanley's attendance issues at school. Plaintiffs allege that Ms. Kibler failed to follow the procedures for filing a truancy petition outlined by "Section 22.1-258 of the Code of Virginia.[2]" (footnote added).

According to plaintiffs' current complaint, Mr. Stanley appeared before Judge Logan of the Shenandoah County Juvenile and Domestic Relations Court on September 22, 2020. Plaintiffs claim Judge Logan denied Ms. Whittington the right to speak in defense of her son. Plaintiffs' complaint alleges that Judge Logan placed Mr. Stanley under house arrest, subject to court monitoring and weekly drug tests. Plaintiffs claim that Judge Logan "violated the code of conduct for judges" and that Mr. Stanley was "denied a fair trial and equal protection under the law due to misconduct and abuse of power during the preliminary hearing."

According to plaintiffs' complaint, on October 8, 2020, Mr. Stanley failed to appear for his court-ordered drug test and was subsequently arrested at his home. Mr. Stanley appeared again before Judge Logan on October 27, 2020. Plaintiffs allege that Mr. Stanley's attorney, Joseph Hopson, "failed to provide adequate representation by failing to defend Alic [Stanley]." (alteration added). According to plaintiffs, during the proceeding, Ms. Whittington claims she "was coerced into taking a urine drug test, despite there being no reasonable probable cause, and she complied under extreme duress." Ms. Whittington asserts that the drug test violated her Fourth Amendment protections against "extremely intrusive search[es]." (alteration added). Upon receiving Ms. Whittington's positive drug test, the complaint alleges Judge Logan "issued a verbal order putting SCDSS [Shenandoah County Department of Social Services] on notice and detaining the child" and "issued a two-sentence order removing the child from his fit mother." (alteration added). Plaintiffs claim the court's removal of Mr. Stanley from Ms. Whittington's custody, allegedly without a formal charge, hearing, trial, or court order, was arbitrary and "calculated to punish Whittington for no just cause," in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert that "the State [of Virginia] created danger for Whittington and her son Alic" by removing Mr. Stanley from Ms. Whittington's home, but do not specify the nature of the alleged danger. (alteration added). According to plaintiffs' complaint, following the proceeding, Family Services Specialist Stephanie Danner and her supervisor, Heather Frost "immediately ambushed" Ms. Whittington. Plaintiffs claim Ms. Danner "abused her authority by

---

Whittington and Alic Stanley, are named in the caption of the case currently before the court, Ms. Whittington was the only plaintiff named in the caption of the earlier complaint. Defendant also refers to Ms. Whittington as the singular plaintiff in the case currently before the court, although Mr. Stanley is included in the caption to the current case and on the defendant's motion to dismiss. The facts recited below are taken from plaintiffs' complaint in the current case.

[2] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiffs' submissions to this court.

threatening Whittington that unless she found a family member approved by G.A.L.[3] for her son to live with, Alic would be placed in foster care," even though Ms. Danner allegedly failed to visit plaintiffs' home to assess Mr. Stanley's safety. (footnote added). Plaintiffs also allege that Ms. Danner referred to Ms. Whittington as a drug addict during this encounter.

While awaiting Mr. Stanley's release from juvenile detention, plaintiffs' complaint states that Ms. Whittington filed an Americans with Disabilities Act Grievance Form with Virginia's judicial system on October 29, 2020, writing that the Juvenile and Domestic Relations Court "made fun of my letter laughing and denying my son be allowed home." Plaintiffs do not clarify what letter the court allegedly made fun of in the complaint before this court. On November 2, 2020, Ms. Whittington allegedly presented a negative drug test to Judge Logan. The following month, Judge Logan released Mr. Stanley into Ms. Whittington's custody "during a court review on matters relating to truancy."

Although unclear on what date and for which case, Ms. Whittington cites a "twice missed a court date involving her brother," prompting Judge Logan to issue a warrant for Ms. Whittington's arrest. On January 3, 2021, Ms. Whittington self-surrendered and was taken into custody. Ms. Whittington was sentenced to serve fifteen days in in jail, during which time Mr. Stanley resided with another family.

According to a document attached to the complaint, the Shenandoah County Department of Social Services (SCDSS) entered a Show Cause Summons Disposition Order on January 14, 2021, requiring that Ms. Whittington follow "DSS [Department of Social Services] Recommendations – including in-patient treatment." (alteration added). SCDSS recommended in-patient rehab "due to Ms. Whittington's second in-court positive drug screen for methamphetamines and her current mental state." According to plaintiffs' complaint, after meeting with Ms. Whittington in jail and obtaining her verbal agreement to participate inpatient therapy, Ms. Danner scheduled a meeting with trauma therapist Jennifer Wimer for January 21, 2021, and an intake assessment with "National Capital Treatment and Recovery" for Ms. Whittington for January 22, 2021. Ms. Whittington was released from jail on January 19, 2021.

Plaintiffs allege that SCDSS Attorney Jeremy McLeary filed a motion for a second Show Cause Summons for Ms. Whittington on February 8, 2021, a copy of which plaintiffs appear to have attached to the complaint. According to this document, Ms. Whittington failed to comply with the first Show Cause Summons Disposition Order entered on January 14, 2021, by failing to attend her scheduled appointments with both the trauma therapist and with National Capital Treatment and Recovery. Plaintiffs claim that the allegations in the second Show Cause Summons are "unfounded and fabricated."

On February 9, 2021, Ms. Whittington allegedly submitted an Information Privacy Complaint with the Virginia Department of Social Services, claiming "Stephany Danner at

---

[3] Although plaintiffs do not provide a definition for "G.A.L.," it appears to stand for Guardian Ad Litem.

3

S.S. [social services[4]] was put on notice after my son and I entered the court system w/ petition alleging, truancy, and child in need of supervision. In which case no evidence or prior history of the claim made by Amanda Kibler (truant officer) has existed." (footnote and alteration added). Plaintiffs do not explain of what Ms. Danner was allegedly put on notice.

Sometime after her release from jail, plaintiffs allege Ms. Whittington contacted Ms. Frost, Ms. Danner's supervisor, and requested a new social worker. Plaintiffs' complaint also alleges Ms. Frost denied Ms. Whittington's request and informed Ms. Whittington that any attempt to bring Mr. Stanley back into her custody would prompt Ms. Frost to file an Order to Show Cause against Ms. Whittington. Ms. Frost also allegedly informed Ms. Whittington that failure to comply with SCDSS' recommendations could result in further jail time. Plaintiffs claim that such communication constituted threats and intimidation, and that "the State's failure to provide adequate procedures to protect the plaintiff (s) from unjust deprivation violated the procedural due process clause of the Constitution."

Because of these alleged threats, Ms. Whittington consented to meet with Ms. Danner on February 26, 2021, to construct a "safety plan" for herself and Mr. Stanley. Prior to the meeting, Ms. Whittington emailed Ms. Danner on February 20, 2021, writing: "I was never afforded procedural due process rights when you [Ms. Danner] decided to keep my son I'm coming home and allowing me only supervised visitation." (alteration added). Ms. Whittington also noted in her email that she had not received documentation or record of any evidence against her, nor had she been informed of her right to refuse service. Ms. Danner responded the next day, stating that while Ms. Whittington had not requested documentation prior to February 19, 2021, her request for records was being processed and that further discussion could be had at their meeting scheduled for February 26, 2021.

Ms. Whittington met with Ms. Danner on February 26, 2021, during which meeting they constructed the safety plan for Ms. Whittington and Mr. Stanley. The plan was to be in place until Mr. Stanley's next hearing on March 11, 2021. The safety plan required that Ms. Whittington pass a drug screen at the SCDSS prior to all unsupervised visitation with Mr. Stanley and "participate in an Assessment phone call for inpatient rehab, with National Capital Treatment and Recovery." Plaintiffs maintain that Mr. Stanley's continued removal from Ms. Whittington's custody was without probable cause and, thus, unlawful. Plaintiffs assert that Ms. Whittington's consent to the "non-statutory Safety Plan" was coerced, in violation of both her due process rights and "a parent's constitutional right to his [sic] child's companionship." (alteration added).

According to plaintiffs, Mr. Stanley "was released from court services" during his hearing on March 11, 2021. Plaintiffs assert that Judge Logan informed Mr. Stanley that he could not return home "until your mother follows SCDSS recommendations." Plaintiffs

---

[4] Plaintiffs use "SCDSS," "DSS," and "S.S." interchangeably throughout the complaint, all of which appear to stand for some variation or segment of "Shenandoah County Department of Social Services."

4

allege "there was no court order to follow, no court hearings were scheduled for any follow-up review, and [Ms.] Whittington had no pending court-related matters." (alteration added). At this hearing, SCDSS Attorney McLeary allegedly served Ms. Whittington the second Show Cause Summons for a hearing on March 25, 2021, which he allegedly filed on February 8, 2021. Plaintiffs allege that the delay between the alleged filing date of the summons and Ms. Whittington's receipt of the summons "indicat[es] a conspiracy against Whittingtons civil rights." (alteration added).

As a result of the second Show Cause Summons filed by SCDSS Attorney McLeary on February 8, 2021, Ms. Whittington appeared before Judge Logan again on March 25, 2021. During this appearance, plaintiffs assert that Ms. Danner "slandered [Ms.] Whittington's name by providing false testimony and withheld exculpatory evidence that showed [Ms.] Whittington was in compliance with the unlawful recommendations." (alterations added). Commonwealth Attorney Brian Layton allegedly "vouched for the false testimony given by former[5] Stephanie Cool-Danner, continued his continued disregard for the truth and proceeded to file charges alleging that Whittington broke the fictitious court order." (footnote added). Plaintiffs maintain that the allegations were not supported by evidence and that, although Ms. Whittington had evidence that demonstrated she followed the "illegal recommendations," she was not allowed to speak on her own behalf at the hearing on March 25, 2021. Plaintiffs claim that, because Mr. Layton "conducted his investigation with malicious intent to secure an unjustified conviction," Ms. Whittington was then arrested without probable cause, deprived of a fair trial, and given an unjustified jail sentence, constituting a cause of action under "42 U.S.C. Section 1983." According to the attachments filed with the complaint, Ms. Whittington was sentenced to 40 days in jail on March 25, 2021, but was "released from jail" on March 31, 2021.

According to plaintiffs' complaint, Ms. Whittington was arrested again on November 6, 2021, for failing to appear before Judge Black and was sentenced to serve thirty-four days in jail and to pay a $500.00 fine. Plaintiffs maintain that Ms. Whittington was wrongfully convicted and imprisoned. According to documents attached to plaintiffs' complaint, Ms. Whittington was released from jail on December 9, 2021.

As noted above, prior to filing the case currently under review, Ms. Whittington filed a complaint also in the United States Court of Federal Claims on September 1, 2021, which was dismissed without prejudice, by the undersigned, for failure to prosecute after Ms. Whittington failed to file a response to the defendant's motion to dismiss. See Whittington v. United States, No. 21-1801C, 2022 WL 883322, at *1.[6]

---

[5] Plaintiffs allege that, at some point in time, the SCDSS stopped employing Ms. Danner.

[6] Ms. Whittington also has filed complaints with other courts. In documents attached to the above captioned complaint, under a section titled "Related cases," plaintiffs' complaint states:

5

As stated above, on December 8, 2022, plaintiffs Megan De'an Whittington and Alic Stanley filed their complaint in t in the United States Court of Federal Claims. Plaintiffs' complaint states that it "realleges all factual statements made in the original complaint."

In the current complaint, plaintiffs allege that the actions and procedures of Virginia state courts and local agencies "violated constitutional guarantees of due process and equal protection, resulting in the deprivation of life, liberty, property, and a diminished ability to be heard," in addition to multiple other constitutional and state law claims. Plaintiffs allege:

> 28 U.S.C. 1491 grants this court subject matter J&DR[7] over civil proceedings under the constitution or federal law. Under 42 U.S.C. 1983, the constitutional issue arises. Plaintiff's claims include The First Amendment freedom of association with her child, The Fourth Amendment invasion of privacy, unlawful search and seizure, The Eighth Amendment cruel and unusual punishment, The Fourteenth Amendment right to due process and equal protection under the law, conspiracy against civil rights, and a Monell claim,[8] wrongful conviction, wrongful imprisonment,

---

5:21-00066 The United States district court for the Western District of Virginia dismissed Whittington v. The Shenandoah County, Commonwealth of Virginia, et al., For failure to state a claim on July 7, 2022

1:21-1801 Whittington v. United States the United States Court of federal claims dismissed without prejudice the case for failure to prosecute on January 3, 2022.

22-1571, Whittington v. United States, the United States court of appeals for the federal circuit dismissed the case for failure to file timely on July 5, 2022

Filed Petition for Writ of Certiorari at The United States Supreme Court on October 10, 2022. Filing was untimely

---

[7] Plaintiffs used the abbreviation "J&DR" apparently to stand for "Juvenile and Domestic Relations" throughout the documents attached to the current complaint, although plaintiffs do not specify the meaning of "J&DR."

[8] Although plaintiffs do not provide a citation or further explanation for their "Monell claim," plaintiffs may be referring to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). In Monell, the United States Supreme Court held that local governing bodies are "persons" for purposes of 42 U.S.C. § 1983 and may be held liable when a constitutional deprivation arises from the execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

6

>    malicious prosecution, abuse of process, U.S. Code 241 – Conspiracy against rights. [18 U.S.C. § 241 (2018)] 18 U.S. Code 242 – Deprivation of rights under color of law. [18 U.S.C. § 242 (2018)] as well as various state-law claims under a broad range of categories, such as negligence, defamation, libel, unlawful searches and seizures, loss of companionship, mental anguish, parental privacy, the burden of litigation, sovereign abuse, involuntary servitude, equal protection of the law, cruel and unusual punishment, humiliation, and injury to reputation, complete loss of self and all or any enjoyment of life, lost earnings, excessive fines, and court fees, and the burden of litigation.

(footnotes and alterations added). Plaintiffs assert this court has jurisdiction under 28 U.S.C. § 1491 (2018) and 28 U.S.C. § 1331 (2018).

On February 7, 2023, defendant moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) (2021) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction. Defendant asserts that this court lacks jurisdiction over each of the plaintiffs' constitutional claims because the cited provisions lack a money mandating basis. Defendant further asserts this court lacks jurisdiction over plaintiffs' tort claims and plaintiffs' claims against Virginia state actors. The motion to dismiss has been fully briefed.

## DISCUSSION

The court recognizes that plaintiffs in the above captioned case are proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading." Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see

---

officers," but may not be held liable under a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. at 690-91. As explained by a Judge of the United States Court of Federal Claims, "claims under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983, 1985, 1988 are properly brought in a United States District Court, not this Court. 42 U.S.C. § 1343. Nor does Monell, 436 U.S. 658, 98 S. Ct. 2018, give rise to a cause of action in this court, as it pertains to local governments' liability under 42 U.S.C. § 1983." Ealy v. United States, 120 Fed. Cl. 801, 805 (2015).

7

also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only.") (alterations added); Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004 (alteration added)))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995 (first alteration added)))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

As noted above, defendant argues that the court must dismiss plaintiffs' complaint on the grounds that "Ms. Whittington's claims are outside this Court's jurisdiction because the constitutional provisions relied upon by Ms. Whittington are not money mandating, and this Court does not have jurisdiction over tort claims." (alteration added). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 578 U.S. 488, 495 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

8

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also Me. Cmty. Health Options v. United States, 140 S. Ct. 1308, 1327-28 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States." (alteration and omission added)); Olson v. United States, 152 Fed. Cl. 33, 40-41 (2021); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. Testan], 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of

9

> the federal claim–whether it be the Constitution, a statute, or a regulation– does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations added); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Medrano v. United States, 159 Fed. Cl. 537, 542 (2022); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."); see also Me. Cmty. Health Options v. United States, 140 S. Ct. at 1327-28. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation. . . ." (citing Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008))); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of

the claim showing that the pleader is entitled to relief. . . ." RCFC 8(a)(1), (2) (2021); Fed. R. Civ. P. 8(a)(1), (2) (2023); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (alteration in Bell Atl. Corp. v. Twombly)).

Plaintiffs' complaint alleges over thirty independent grounds for relief, including claims of constitutional violations, claims of criminal conduct, claims sounding in tort, and state-based claims. Plaintiffs specifically allege violations of "The Fourteenth Amendment right to due process and equal protection under the law." Plaintiffs further allege "wrongful conviction," and "abuse of discretion," which may assert violations of plaintiffs' due process rights. Defendant argues that "the due process clauses in the Fifth and Fourteenth Amendments do not provide a plaintiff with jurisdiction in the Court of Federal Claims because they are not money-mandating." To the extent plaintiffs' complaint raises due process claims pursuant to the United States Constitution, the United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the [Fifth Amendment] Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), (alterations added), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he [Fifth Amendment] due process clause does not obligate the government to pay money damages.") (alterations added), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray

11

v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Yates v. United States, 150 Fed. Cl. 128, 135 (2020) (citing LeBlanc v. United States, 50 F.3d at 1028); Whiteford v. United States, 148 Fed. Cl. 111, 121 (2020) (citing Smith v. United States, 709 F.3d at 1116); Vondrake v. United States, 141 Fed. Cl. 599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116); Maehr v. United States, 139 Fed. Cl. 1, 3-4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir.), cert. denied, 140 S. Ct. 49, reh'g denied, 140 S. Ct. 566 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. at 238. Accordingly, this court does not have jurisdiction over any due process claims plaintiffs may be trying to bring in this court and those claims must be dismissed.

Plaintiffs allege additional constitution-based violations, specifically: "First Amendment freedom of association with her child, The Fourth Amendment invasion of privacy, unlawful search and seizure, The Eighth Amendment cruel and unusual punishment." Plaintiffs also appear to allege a violation of Mr. Stanley's Sixth Amendment right to effective assistance of counsel, alleging Mr. Stanley's attorney, Joseph Hopson, "lacked due diligence, did not keep Whittington or Stanley informed," "did not provide evidence," "appeared to be unfamiliar with relevant legal precedents," and "failed to provide adequate representation by failing to defend Alic [Stanley]." (alteration added). Defendant again argues that "this Court lacks jurisdiction to hear a claim based on the First, Fourth, and Eighth Amendments because they are also not money-mandating provisions," and therefore must be dismissed. Defendant does not specifically address plaintiffs' allegations which appear to assert a claim of a violation of the Sixth Amendment.

It is correct that the First, Fourth, Sixth, and Eighth Amendments to the United States Constitution also do not obligate the United States to pay money damages and, thus, cannot serve as the basis for jurisdiction in the United States Court of Federal Claims. See United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) ("We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money."); Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) ("[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims." (alteration added)); Deggins v. United States, 39 Fed. Cl. 617, 621 (1997), appeal dismissed, 152 F.3d 949 (Fed. Cir. 1998)); Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'") (quoting Edelmann v. United States, 76 Fed. Cl. 376, 383 (2007)). Therefore, this court does not have jurisdiction over any of the plaintiffs' claims that allege a violation of the First, Fourth, Sixth, and Eighth Amendments, and they must be dismissed.

In addition to claims of constitutional violations, plaintiffs also assert two claims apparently founded in criminal law under "U.S. Code 241 – Conspiracy against rights [18

U.S.C. § 241 (2018)]," and "18 U.S. Code 242 – Deprivation of rights under color of law [18 U.S.C. § 242 (2018)]." (alterations added). Defendant does not specifically address these claims. The jurisdiction of the United States Court of Federal Claims, however, does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (alterations added) (internal citation omitted)); Whiteford v. United States, 148 Fed. Cl. at 122 ("[T]he Court of Federal Claims . . . lacks jurisdiction over criminal acts.") (alterations added); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615, reh'g denied, (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Therefore, any allegations of criminal conduct by officials must fail for lack of jurisdiction in this court and must be dismissed.

Plaintiffs further allege "Neglect to Prevent/Conspiracy" under 42 U.S.C. § 1986 (2018), claiming "the defendants were aware that wrongs were about to be committed but chose not to use their power to prevent or aid in the prevention of them." Plaintiffs separately assert a claim for "Malicious Prosecution/Wrongful Conviction," citing 42 U.S.C. § 1983 (2018). Although plaintiffs assert these claims for the first time in plaintiffs' opposition to defendant's motion to dismiss, in recognition of plaintiffs' pro se status, the court briefly addresses plaintiffs' new allegations. The court first notes that plaintiffs' claims of "Neglect to Prevent/Conspiracy" and "Malicious Prosecution/Wrongful Conviction" appear to be either civil rights claims or tort claims, which, as explained in more detail below, both are not within the jurisdiction of this court. See 28 U.S.C. § 1491(a); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993). Furthermore, claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1986 refer to sections of the Civil Rights Acts, and this court does not have subject matter jurisdiction over actions arising under the Civil Rights Acts. See Pikulin v. United States, 97 Fed. Cl. 71, 77 ("Plaintiff also cites various provisions of the Civil Rights Acts, including §1981, §1983, §1985, and §1986, as bases for his claim. The court does not possess jurisdiction to entertain claims based on these statutes." (citing Marlin v. United States, 63 Fed. Cl. 475, 476, appeal dismissed, 140 F. App'x 256 (Fed. Cir. 2005), and Anderson v. United States, 22 Cl. Ct. 178, 179 n. 2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991)), appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011)); Hubbard v. United States, 80 Fed. Cl. 282, 283 (noting that the Civil Rights Act encompasses 42 U.S.C. § 1988), aff'd, 315 F. App'x 307 (Fed. Cir. 2009); Schweitzer v. United States, 82 Fed. Cl. 592, 595 (2008) ("Likewise, this court does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively in the district courts." (citing Stamps v. United States, 73 Fed. Cl. 603, 609-10 (2006) (citing Anderson v. United States, 22 Cl. Ct. at 179)); Salman v. United States, 69 Fed. Cl. 36, 39 n.3 (2005) ("Plaintiff has also alleged unlawful prosecution on the part of the government, but has cited no money-mandating source of law that would afford him

compensation for this alleged behavior of the government. Inasmuch as plaintiff's allegation might refer to the civil rights violations proscribed by 42 U.S.C. § 1983 (2000), this court has no jurisdiction over section 1983 claims." (citing Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979)); Marlin v. United States, 63 Fed. Cl. at 476 (stating that this "Court does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts") (citations omitted)). Thus, any allegations arising under the Civil Rights Acts fails for lack of jurisdiction in this court and must be dismissed.

Regarding plaintiffs' tort claims, defendant argues that "the Tucker Act excludes any claims sounding in tort from this Court's jurisdiction." The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. §1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. at 214; Rick's Mushroom Serv. Inc., v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Weir v. United States, 141 Fed. Cl. 169, 177 (2018) (citing 28 U.S.C. § 1343(a)(4)) (only federal district courts possess jurisdiction over claims alleging civil rights violations); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort . . . .") (alteration added); Cox v. United States, 105 Fed. Cl. 213, 218 ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception. However, the Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort." (alteration added)), appeal dismissed (Fed. Cir. 2012); Reid v. United States, 95 Fed. Cl. 243, 249 (2010) (plaintiff's invasion of privacy claims dismissed for lack of jurisdiction); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Mendes v. United States, 88 Fed. Cl. at 762 (plaintiff's claim for invasion of privacy is a tort claim which this Court lacks jurisdiction); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009). To the extent that plaintiffs assert claims sounding in tort, such claims are not within the jurisdiction of this court. In sum, all plaintiffs' numerous allegations included in their current complaint which sound in violations of the United States Constitution, criminal law, or tort must be dismissed.

The caption of the current complaint under review was filed listing the United States as the defendant in the complaint. Plaintiffs also provide a list of over ten entities and individuals under a section titled "Defendants," as follows:

14

> The Shenandoah County Commonwealth of Virginia, the Shenandoah County Commonwealth of Virginia Judicial System, the Virginia Department of Education, the Virginia Department of Social Services in Richmond, Virginia, and the Shenandoah County Department of Social Services in Woodstock, Virginia Chad Arthur Logan, as a Judge in the Shenandoah County Juvenile and Domestic Relations Court; Brian Cooper Layton, as a former Shenandoah County Commonwealth Attorney of Virginia; Kevin Black, as a Judge in the Shenandoah County Circuit Court; Bradly Pollack, as a municipal board member of the Shenandoah County Commonwealth of Virginia; Jeremy McLeary, as the Mayor of Woodstock, Virginia; Stephanie Danner, as a former F.S.S. at the Shenandoah County Department of Social Services; and Heather Frost, as a former supervisor at the Shenandoah County Department of Social Services.

Looking at the above list, however, neither the complaint nor the 63 pages of material attached to the complaint contain a single mention of a claim against the United States. It is well established, however, that this court lacks jurisdiction to hear claims against state or local officials, who are not federal employees. See United States v. Sherwood, 312 U.S. 584, 588 (1941) (noting that "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court [United States Court of Claims])" (alteration added) (citing United States v. Jones, 131 U.S. 1, 9 (1889); Lynn v. United States, 110 F.2d 586, 588 (5th Cir. 1940); Leather & Leigh v. United States, 61 Ct. Cl. 388 (1925)); see also Brown v. United States, 105 F.3d at 624 ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."); Bey v. United States, 153 Fed. Cl. 814, 819 (2021) (holding that the United States Court of Federal Claims does not have jurisdiction over claims against state and local agencies); Gulley v. United States, 150 Fed. Cl. at 412-13; Cooper v. United States, 137 Fed. Cl. 432, 434 (2018) (finding that the United States Court of Federal Claims "lacks subject matter jurisdiction to consider plaintiff's claims to the extent they are made against individuals"); Robinson v. United States, 127 Fed. Cl. 417, 420 (2016) ("The court is without 'jurisdiction over claims against individuals.'" (quoting Emerson v. United States, 123 Fed. Cl. 126, 129 (2015))); Merriman v. United States, 128 Fed. Cl. 599, 602 (2016) ("The United States Court of Federal Claims does not have subject matter jurisdiction over claims against private individuals or state officials." (citing United States v. Sherwood, 312 U.S. at 588)); Hicks v. United States, 118 Fed. Cl. 76, 81 (2014); Cox v. United States, 105 Fed. Cl. at 216; Reid v. United States, 95 Fed. Cl. at 248 ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court [the United States Court of Federal Claims] has no jurisdiction to hear those allegations." (quoting Moore v. Pub. Defs. Office, 76 Fed. Cl. 617, 620 (2007))) (alteration added). To the extent that any of plaintiffs' remaining claims arise as complaints against Virginia state officials or private individuals, and not against the United States, this court lacks jurisdiction over those claims and those claims must also be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the above captioned case is **GRANTED**. Plaintiffs' complaint is **DISMISSED**, without prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
         **Judge**